650 P.2d 1282

**Rose ICKES, a widow, Plaintiff-Appellee,**

v.

**BACHE HALSEY STUART SHIELDS, INC., Defendant-Appellant.**

**No. 1 CA–CIV 6292.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 10, 1982.

Winston & Strawn by W. Charles Thomson, Richard W. Shapiro, Phoenix, for defendant-appellant.

Murphy, Ingraham & Clements by Timothy A. Ingraham, William A. Clarke, Phoenix, for plaintiff-appellee.

OPINION

CORCORAN, Judge.

The primary issue on this appeal is whether a factual issue was raised precluding summary judgment against Bache Halsey Stuart Shields, Inc. (Bache) for conversion of a forged check with a forged endorsement. We affirm.

The pertinent facts, briefly stated, which give rise to this litigation are as follows. In January, 1981 appellee Rose Ickes (Mrs. Ickes) was introduced to Roger Giles by her nephew and subsequently rented Giles a room in her home. Giles studied the stock market and on several occasions advised Mrs. Ickes to purchase stock. Mrs. Ickes' confidence in Giles led her to open a brokerage account at Charles Schwab & Co., Inc. (Schwab) and execute a Limited Special Power of Attorney allowing Giles to buy and sell for this account. The power of attorney did not authorize Giles to receive

money from the account nor to endorse her name on checks.

On February 17, 1981 Giles purchased 1000 shares of Tandy stock for Mrs. Ickes' account at Schwab. Approximately ten days later, when Mrs. Ickes was out of town, Giles directed Schwab to sell the stock which resulted in a $40,192.55 credit to the account. On March 6, 1981 Schwab issued and apparently mailed a check for this amount with "Rose Ickes" as payee. Although the record is unclear as to Giles' precise actions, Giles obtained this check without authority and without the knowledge of Mrs. Ickes.

On March 9, 1981 Giles took the check to the Bache office in Scottsdale, Arizona where he had a personal securities account and requested that it be deposited to his account. The check had a forged endorsement of Mrs. Ickes' signature on its reverse side. The Bache branch manager, Melvin Selbst, noted that the depositor was not the payee and asked Giles about this discrepancy. Giles informed Selbst that he had a power of attorney from Rose Ickes. Mr. Selbst was not shown the Limited Special Power of Attorney; neither did he attempt to contact Mrs. Ickes to verify her signature. *See generally Restatement (Second) of Agency* § 167 (1958). Selbst did inform Giles that Bache required a note from Mrs. Ickes authorizing the deposit and directed another Bache employee to inform Giles of the contents required in a written authorization. This employee dictated the verbiage required in the note. Giles returned the same day with a note scribbled on Bache's own note pad with another forged signature of Mrs. Ickes.

Bache did not require any guarantee or notarized proof of the endorsement for the signature on the check or the note but simply compared the signature on the note with the signature on the check. Further, Bache did not require Giles to endorse the check below Mrs. Ickes' forged signature. The check was accepted by Bache and the monies deposited to Giles' account. Subsequently, Giles removed all funds from this account and disappeared.

Rose Ickes brought suit against Bache and others on June 4, 1981. On September 3, 1981 the trial court granted a motion brought by Mrs. Ickes for summary judgment against Bache for conversion of the check. Bache timely appealed the judgment. We affirm the trial court.

This matter is governed by the commercial code, specifically by A.R.S. § 44–2556 (UCC § 3–419(3)) which provides in part:

A. An instrument is converted when:

. . . .

3. It is paid on a forged indorsement.

. . . .

C. Subject to the provisions of this chapter concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.[1]

■ Bache contends that summary judgment was improper because a factual issue exists concerning whether it acted in a commercially reasonable manner in depositing the check to Giles' account. In support of this contention, appellant cites authority including *Continental Bank v. Wa-Ho Truck*

---

1. Bache asserts and Mrs. Ickes inferentially assumes that Bache was a "representative" for purposes of this statute. A.R.S. § 44–2208(35) (UCC § 1–201) defines "representative" as:

an agent, an officer of a corporation or association, and a trustee, executor or administrator of an estate, or any other person empowered to act for another.

As in *Continental Bank v. Wa-Ho Truck Brokerage*, 122 Ariz. 414, 595 P.2d 206 (1979), we assume, without deciding, that the defense based on this subsection is available to Bache under the facts of this case.

Mrs. Ickes has argued without citation to authority that the defense of commercial reasonableness is available only to intermediary or collecting banks which do not deal directly with the forger. The language of the statute does not support this contention.

*Brokerage, infra* note 1, for the general proposition that what constitutes commercial standards must be decided on a case-by-case basis in the context of specific facts. However, where the material facts are undisputed, it is a question for the court.[2] Further, A.R.S. § 44–2556 makes good faith and commercial reasonableness *affirmative defenses* to conversion. Bache, therefore, had the burden of proving that its actions were commercially reasonable.[3] *Citizens State Bank v. National Surety Corp.,* 612 P.2d 70 (Colo. 1980). *See also Continental Bank v. Wa-Ho Truck Brokerage, supra; Robert A. Sullivan Construction Co. v. Wilton Manors National Bank,* 290 So.2d 561 (Fla.App.1974); *National Bank of Georgia v. Refrigerated Transport Co.,* 147 Ga.App. 240, 248 S.E.2d 496 (1978); *Berkheimers, Inc. v. Citizens Valley Bank,* 270 Or. 807, 529 P.2d 903 (1974).

In *Continental Bank* this court reversed summary judgment against a defendant bank for conversion of over 100 checks having unauthorized endorsements. Plaintiffs were companies whose bookkeeper had diverted checks made payable to the plaintiffs by using a rubber stamp endorsement entrusted to him by plaintiffs. The bookkeeper had deposited these checks to an account for which the signature card indicated he was doing business as the plaintiffs. In opposition to the plaintiffs' motion for summary judgment the bank presented affidavits of two expert witnesses familiar with banking practices concerning third-party checks bearing unrestricted endorsements. The affiants stated that their review of the record led them to conclude that the bank had acted in accordance with reasonable commercial standards. This court held that:

We are not prepared to say, especially in view of the Bank's affidavits on the subject, that as a matter of law, the Bank, under these circumstances, acted contrary to reasonable commercial standards. The most we are prepared to say is that a factual issue on this subject has been raised.

122 Ariz. at 420, 595 P.2d at 212.

Unlike the expert testimony presented by the defendant in *Continental Bank,* Bache's response to the motion for summary judgment was limited to an affidavit of its branch manager stating that Bache had initially refused to accept the check until it was made aware that Giles had a power of attorney and lived at the same residence as Mrs. Ickes. The affidavit further stated that Bache accepted a note purportedly from Mrs. Ickes authorizing the deposit of the check. Further, in contrast to the facts in *Continental Bank,* no assertion was made in the instant case that Mrs. Ickes' conduct constituted negligence substantially contributing to the forgeries. *See* A.R.S. § 44–2543 (UCC § 3–406).

█ Mrs. Ickes presented evidence that Bache had made payment on a forged instrument and that the note also was forged. To defeat her motion for summary judgment it was necessary for Bache to produce appropriate proof of its affirmative defense, *i.e.,* that it had acted in accordance with reasonable commercial standards applicable to a brokerage firm dealing with a check on behalf of one who was not the true owner. *See Robert A. Sullivan Construction Co. v. Wilton Manors National Bank, supra.*[4] Bache presented no evidence to

---

**2.** Without directly addressing the issue, numerous jurisdictions have implicitly held "commercial reasonableness" to be a question of law by determining whether defendants have established a defense pursuant to UCC § 3–419(3). *See, e.g., Tubin v. Rabin,* 389 F.Supp. 787, 789–90 (N.D.Tex.1974), *aff'd,* 533 F.2d 255 (5th Cir. 1976); *Cooper v. Union Bank,* 9 Cal.3d 371, 107 Cal.Rptr. 1, 507 P.2d 609 (1973); *Salsman v. National Community Bank,* 102 N.J.Super. 482, 246 A.2d 162 (1968); *Belmar Trucking Corp. v. American Trust Co.,* 65 Misc.2d 31, 316 N.Y.

S.2d 247 (Civ.Ct.N.Y.1970); *Bank of the West v. Wes-Con Dev. Co.,* 15 Wash.App. 238, 548 P.2d 563 (1976).

**3.** Mrs. Ickes does not contend that Bache acted in bad faith and therefore we consider only the issue of commercial reasonableness.

**4.** We note that failure of a *bank* to authenticate a signature of a non-customer payee has been held as a matter of law to preclude a defendant from raising the affirmative defense of commercial reasonableness. *See Tubin v. Rabin,*

demonstrate what constitutes a commercially reasonable standard for a brokerage firm when its customers present checks for deposit naming third parties as payees; nor did it present any evidence that Bache's conduct met that standard. The opponent to a motion for summary judgment must show that evidence is available which justifies going to trial. *See, e.g., Portonova v. Wilkinson,* 128 Ariz. 501, 627 P.2d 232 (1981).

 Under the circumstances of this case we are of the opinion that the trial court could properly conclude as a matter of law that Bache failed to sustain its burden that there was a factual issue with respect to the commercial reasonableness of its actions.

Appellee, Mrs. Ickes, has requested attorneys' fees alleging that this appeal is

"groundless and not made in good faith." A.R.S. § 12–341.01(C). We cannot say that such a conclusion is supported by "clear and convincing evidence" as required by that subsection. We find that appellant raised a debatable issue concerning the sufficiency of its defense pursuant to A.R.S. § 44–2556(C). We therefore decline to award attorneys' fees.

Judgment affirmed.

OGG, P.J., and FROEB, J., concur.

---

*supra; Twellman v. Lindell Trust Co.,* 534 S.W.2d 83 (Mo.App.1976); *Belmar Trucking Corp. v. American Trust Co., supra; Sherriff-Goslin Co. v. Cawood,* 91 Mich.App. 204, 283 N.W.2d 691 (1979). We do not reach the issue of what would be reasonable for a brokerage

firm under these circumstances because we find Bache's failure to raise a factual issue concerning the existence of standards of commercial reasonableness and its compliance with such standards to be dispositive of this appeal.